KATHLEEN BENWAY, DC Bar No. 474356
GARY L. IVENS, DC Bar No. 415004
Federal Trade Commission
600 Pennsylvania Ave, NW, H-286
Washington, DC  20580
Phone:  (202) 326-2024 / (202) 326-2330
Fax:  (202) 326-3395
Email:  kbenway@ftc.gov / givens@ftc.gov

*ATTORNEYS FOR PLAINTIFF*
*FEDERAL TRADE COMMISSION*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> – *v.*– <br><br> **Handicapped & Disabled Workshops, Inc.**, *et al.*, <br><br> Defendants. | **Case No. CV-08-0908-PHX-DGC** <br><br> **PLAINTIFF FTC'S MOTION FOR AND MEMORANDUM IN SUPPORT OF ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST THE CORPORATE DEFENDANTS** |

# Table of Contents

I.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. CORPORATE DEFENDANTS' BUSINESS PRACTICES . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Clerk of Court's Entry of Default Was Proper. . . . . . . . . . . 4

    B.  Entry of Default Judgment is Warranted . . . . . . . . . . . . . . . . . . . 5

        1.  The FTC Will Be Prejudiced if
Default Judgment is Not Granted . . . . . . . . . . . . . . 5

        2.  The FTC's Claims Have Been Properly Pled and
The Merits of its Substantive Claims Favor
Granting Default Judgment . . . . . . . . . . . . . . . . . . . 6

            a.  Section 5 of the FTC Act. . . . . . . . . . . 6

            b.  The Unordered Merchandise
Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            c.  The Telemarketing Sales
Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.  *Eitel* Factors Four Through Seven Also
Weigh in the FTC's Favor . . . . . . . . . . . . . . . . . . . . 9

    C.  The Court Should Enter a Default Judgment for the
Requested Injunctive and Equitable Relief against
Corporate Defendants Because it is Authorized
and Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.  The Requested Relief is Authorized . . . . . . . . . . . . 10

        2.  The Court Should Enter a Default Judgment
Against the Corporate Defendants for
Equitable Monetary Relief in the Amount
of $13,421,918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.  The Court Should Order the Permanent
Receiver to Wind Down the Corporate
Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Table of Authorities

## Cases

*Aldabe v. Aldabe,* 616 F.2d 1089 (9th Cir 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Best W. Int'l v. Universal Hospitality, Inc.*, No. CV-08-91-PHX-DCG,
  2008 U.S. Dist. LEXIS 40348 (D. Ariz. May 8, 2008) . . . . . . . . . . . . . . . 5, 6, 9, 10

*CFTC v. Emerald Worldwide Holdings, Inc.,* No. CV03-8339 AHM, 2005
  U.S. Dist. LEXIS 42893 (C.D. Cal. April 19, 2005). . . . . . . . . . . . . . . . . . . . . . 12

*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319
  (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9, 10

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 6

*Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780 (11th Cir. 1993) . . . . . . . . . . . . . 12, 13

*FTC v. Atlantex Assocs.*, No. 87-0045-CIV, 1987 WL 20384 (S.D. Fla. Nov. 25,
  1987), *aff'd*, 872 F.2d 966 (11th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*FTC v. Bay Area Bus. Council, Inc.*, 2004 WL 769388 (N.D. Ill. 2004). . . . . . . . . . . . 12

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*FTC v. Figge Int'l*, 994 F.2d 595 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . 10, 11

*FTC v. Gill,* 265 F.3d 944 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . 10, 13

*FTC v. Sec. Rare Coin*, 931 F.2d 1312 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . 11

*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000),
  *rev'd. in part on other grounds*, 312 F.3d 259 (7th Cir. 2002).. . . . . . . . . . . . . . . 12

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984).. . . . . . . . . . . . . 10, 11, 14

*FTC v. Winward Mktg. Ltd.*, No. 1:96-CV-615F, 1997 WL 33642380
  (N.D. Ga. Sept. 30, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . 6, 9

*Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410 (5th Cir. 1998) . . . . . . . 12

*Speiser, Krause & Madole v. Ortiz*, 271 F.3d 884 (9th Cir. 2001). . . . . . . . . . . . . . . . 4, 5

*United States v. High Country Broad. Co, Inc.*, 3 F.3d 1244
  (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

**Statutes & Regulations**

15 U.S.C. § 57a(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 6102(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Section 5 of the FTC Act, 15 U.S.C. § 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 8, 10, 13

Telemarketing Sales Rule, 16 C.F.R. § 310 . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 10, 13

Unordered Merchandise Statute, 39 U.S.C. § 3009.. . . . . . . . . . . . . . . . . . . . 1, 7, 8, 10, 13

Pursuant to Fed. R. Civ. P. 55(b)(2), and this Court's local rules, Plaintiff Federal Trade Commission ("FTC" or "Commission") hereby moves for the entry of judgment by default against defendants Handicapped & Disabled Workshops, Inc. ("HDW"), Handi-Hope Industries, Inc. ("HHI"), and Handi-Ship, LLC (collectively, "Corporate Defendants"). As explained below, these three defendants, despite having been served with summonses and copies of the FTC's Complaint, have failed to appear, answer, or otherwise respond to the FTC's Complaint. The Commission requests, therefore, that the Court enter the proposed Default Judgment and Final Order for Permanent Injunction against the Corporate Defendants, filed herewith.

## I. PROCEDURAL HISTORY

On May 13, 2008, the FTC filed a complaint in this Court for injunctive and other equitable relief against the Corporate Defendants and their principals – Bruce D. Peeples ("Peeples"), Joshua D. Abramson ("Abramson"), and George Thomas ("Thomas") – for engaging in acts and practices that violate Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, and the Unordered Merchandise Statute, 39 U.S.C. § 3009. [Docket Entry 3.]

On May 14, 2008, upon motion by the FTC, the Court entered an ex parte temporary restraining order ("TRO") that, among other things, froze Defendants' personal and corporate assets, appointed a Receiver for the Corporate Defendants and ordered the defendants to show cause why a preliminary injunction should not issue. [Docket Entry 13.] On May 23, 2008, the parties filed a proposed Stipulated Preliminary Injunction ("Stipulated PI") that continued the substantive provisions of the TRO and made the receivership permanent. [Docket Entry 27.] On May 27, 2008, the Court entered the Stipulated PI. [Docket Entry 29.]

Each of the Corporate Defendants was served with a copy of the Complaint and Summons on May 15, 2008. See Declaration of FTC Counsel Kathleen Benway, attached as Exhibit 1, at ¶ 5 ("Benway Decl."). Returns of Service were executed and

subsequently filed with the Court attesting that the Corporate Defendants had been properly served. [Docket Entry 21-23.] Under Fed. R. Civ. P. 12(a)(1)(A), the Corporate Defendants had until June 4, 2008, to answer or otherwise respond to the FTC's Complaint, and they failed to do so.[1] On June 23, 2008, the Clerk of Court entered defaults against the Corporate Defendants pursuant to Fed. R. Civ. P. 55(a). [Docket Entry 34.] To date no counsel have entered an appearance in this action on behalf of the Corporate Defendants, and the Corporate Defendants have not asked the Court to set aside the entry of default.

Pursuant to Fed. R. Civ. P. 30 and Section XXII of the Stipulated PI, which allows for expedited discovery, between June 10 and June 11, 2008, Commission attorneys took the asset deposition of defendant Bruce D. Peeples, and the 30(b)(6) deposition of defendant HDW. Defendants Peeples testified on behalf of HDW. On July 8, 2008, the FTC took the deposition of defendant Joshua D. Abramson.

On August 1, 2008, the Permanent Receiver appointed by the Court filed Receiver's First Report, Pursuant to Section XVII of the Stipulate PI. [Docket Entry 37.] Within that report, the Permanent Receiver noted his conclusion that the Corporate Defendants cannot be operated lawfully and profitably.

## II. CORPORATE DEFENDANTS' BUSINESS PRACTICES

As the Complaint alleges, since at least 1998, Corporate Defendants, all for-profit entities, have operated as a common enterprise to dupe consumers, many of whom are elderly, into paying highly-inflated prices for common household products. Through

---

[1] Individual defendants Peeples, Abramson, and Thomas (collectively, "Individual Defendants") also have not answered or otherwise responded to the FTC's Complaint. Since entry of the Stipulated PI, the FTC has been in active settlement negotiations with the Individual Defendants. For that reason, it has not sought entry of default against them. Should settlement negotiations with any of the Individual Defendants fail, the FTC will seek entry of default as appropriate.

2

their unlawful scheme, Corporate Defendants have defrauded consumers out of more than $13.4 million dollars during the last three years alone.  Corporate Defendants solicit consumers through outbound telemarketing calls seeking "support" or "donations" in the name of Handicapped & Disabled Workshops, Inc., Handi-Tech Company, or Handi-Hope Industries.  Many consumers agree to purchase Corporate Defendants' high-priced products, believing that doing so will help handicapped and disabled workers employed by Corporate Defendants.

Corporate Defendants relentlessly pursue consumers and refuse to take "no" for an answer.  When consumers decline to make an initial purchase or subsequently refuse to continue purchasing Corporate Defendants' products, Corporate Defendants mail packages of unordered household products to consumers containing invoices demanding payment.  Corporate Defendants repeatedly harass those consumers for payment via collections calls and dunning letters threatening legal action.  As a result of these aggressive tactics, Corporate Defendants induce many consumers to pay for unordered or unwanted consumer products.

Corporate Defendants also bill unauthorized charges and debits to previous purchasers' credit or debit cards or bank accounts (using information obtained from consumers' previous purchases).  Corporate Defendants unlawfully solicit consumers whose telephone numbers are on the National Do Not Call Registry, and unlawfully ignore consumers' requests to be placed on Corporate Defendants' in-house Do Not Call lists.  In addition, Corporate Defendants do not pay annual fees to access the National Do Not Call Registry, as all telemarketers are required to do.

Other evidence has emerged since the filing of the Complaint that further supports Corporate Defendants' liability under Section 5 of the FTC Act and the TSR.  On June 10 - 11, 2008, attorneys for the Commission deposed HDW in Phoenix pursuant to Fed. R. Civ. P. 30(b)(6).  Defendant Peeples designated himself as the corporate witness to respond to questions on behalf of HDW.  During that deposition, defendant Peeples made a series of inculpatory admissions.  For example, Defendant Peeples admitted that in their

pitch to consumers, HDW's telemarketers falsely represent that they are blind handicapped, or disabled:

> Q. Were your telemarketing employees encouraged to say that they were handicapped or disabled even if they weren't?
>
> A. It's pretty clear that we were telling people to say that they were handicapped. I didn't do it, but as a company we did do that. You know, I knew that people were saying they were handicapped when they weren't. But again, that's the way it was since day 1 in the industry. So it's funny after a while you start thinking things are okay when they're not, you know.

Excerpt from the Rule 30(b)(6) Examination of Handicapped & Disabled Workshops, Inc. (the "HDW Deposition") attached as Exhibit 2, at 62. Peeples further admitted that Corporate Defendants had flatly ignored warnings by various state agencies to cease and desist telemarketing to consumers in their states and/or register as telemarketers in their states. Id., at 136-138.

### III.  ARGUMENT

In light of the Corporate Defendants' failure to answer or otherwise respond to the Complaint filed against them by the FTC and the resulting Entry of Default by the Clerk, this Court should enter a Default Judgment and Permanent Injunction against them. See Speiser, Krause & Madole v. Ortiz, 271 F.3d 884, 886-87 (9th Cir. 2001) (affirming entry of default judgment based on defendant's failure to timely answer complaint).

**A.  The Clerk of Court's Entry of Default Was Proper**.

Pursuant to Fed. R. Civ. P. 55(a), when it is established "by affidavit or otherwise" that a defendant "has failed to plead or otherwise defend" against the complaint, the clerk of the court shall enter a default against that defendant. The Summons and Complaint in this action were served properly served on the Corporate Defendants on May 15, 2008. Benway Decl. at ¶ 5.

Pursuant to Fed. R. Civ. P. 12(a)(1)(A), Corporate Defendants' time to answer or otherwise defend against the Complaint expired twenty days after the date of service, i.e., on June 4, 2008. The Court's docket sheet confirms that Corporate Defendants have not filed a response to the FTC's Complaint. Id. Moreover, to date, counsel for the

1  Commission has not been served with an Answer or other motion filed by Corporate
2  Defendants in response to the FTC's Complaint.  Id. ¶ 6.
3      Accordingly, the grounds for default are clearly established and the Clerk of Court
4  properly entered a default against the Corporate Defendants.  Id. ¶ 7.

5  **B.   Entry of Default Judgment is Warranted**

6      Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, when default has been
7  entered against a defendant and the plaintiff's claim is not for a "sum certain or a sum
8  which by computation can be made certain, the Court may enter a default judgment.  See
9  Best W. Int'l v. Universal Hospitality, Inc., No. CV-08-91-PHX-DCG, 2008 U.S. Dist.
10 LEXIS 40348 at *2-3, (D. Ariz. May 8, 2008) (citing Fed. R. Civ. P. 55(b)(2); Aldabe v.
11 Aldabe, 616 F.2d 1089,1092 (9th Cir 1980) ("Once a party's default has been entered, the
12 district court has discretion to grant default judgment against that party.")).  Courts
13 routinely enter default judgments based solely on the well-pleaded allegations in the
14 plaintiff's complaint, which are deemed admitted as a result of the defendant's default.
15 See, e.g., Speiser, Krause & Madole v. Ortiz, 271 F.3d 884, 886-87 (9th Cir. 2001)
16 (affirming entry of default judgment based on defendant's failure to answer the complaint
17 in a timely manner).  In the Ninth Circuit, courts consider seven factors, no one of which
18 alone is dispositive, in deciding whether to grant default judgment.  Eitel v. McCool, 782
19 F.2d 1470, 1471-72 (9th Cir. 1986); Best W. Int'l, 2008 U.S. Dist. LEXIS 40348 at *5.
20 Those factors include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the
21 claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the
22 possibility of a dispute concerning material facts; (6) whether default was due to excusable
23 neglect, and (7) the policy favoring a decision on the merits.  Eitel, 782 F.2d at 1471-72.
24     As discussed below, application of each of the Eitel factors to this case, strongly
25 favors granting the default judgment and all relief requested by the FTC.

26      **1.   The FTC Will Be Prejudiced if Default Judgment is Not Granted**
27     The first Eitel factor weighs in favor of granting the FTC's motion because the
28 FTC will be prejudiced if default judgment is not entered.  Despite the requirement under

5

1  Fed. R. Civ. P. Rule 12(a)(1)(A) to file an answer within 20 days after being served with a
2  summons and complaint, Corporate Defendants have failed to answer or otherwise
3  respond to the Complaint.  None of the Corporate Defendants has retained counsel.  See
4  United States v. High Country Broad. Co, Inc., 3 F.3d 1244, 1245 (9th Cir. 1993) ("A
5  corporation may appear in federal court only through licensed counsel.")  To have to
6  continue to litigate against the three Corporate Defendants when they have shown no
7  interest in defending against the Complaint would prejudice the FTC, because without an
8  answer from the Corporate Defendants, the predicate for testing the FTC's allegations is
9  lacking.  Thus, the litigation is impeded and no movement toward settling the case against
10 the Corporate Defendants is possible.  Moreover, if the FTC's motion for default judgment
11 is not granted, "it will likely be without other recourse for recovery."  See Eitel, 782 F.2d
12 at 1471-72 (citations omitted).  Such prejudicial effects can be avoided by entry of default.

   **2.   The FTC's Claims Have Been Properly Pled and The Merits of its
        Substantive Claims Favor Granting Default Judgment**

15    The second and third Eitel factors – merits of the substantive claims and sufficiency
16 of the complaint – also favor default judgment.  "In applying the Eitel factors, 'the factual
17 allegations of the complaint, except those relating to the amount of damages, will be taken
18 as true.'"  See Best W. Int'l, 2008 U.S. Dist. LEXIS 40348 at *3 (quoting Geddes v.
19 United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)); see also Fair Hous. of Marin v.
20 Combs, 285 F.3d 899, 906 (9th Cir. 2002) (noting that the general rule is that well-pled
21 allegations in the complaint regarding liability are deemed true).  As described below, the
22 evidence submitted in support of the TRO amply demonstrates the merits of the FTC's
23 substantive claims against Corporate Defendants.  Additionally, the allegations contained
24 in the FTC's Complaint properly state a claim against the Corporate Defendants for each
25 of its eight claims.  Id.

       **a.   Section 5 of the FTC Act**

27    The FTC alleged that the Corporate Defendants have engaged in deceptive and
28 unfair acts or practices in violation of Section 5 of the FTC Act.  See FTC v. Gill, 265

F.3d 944, 950 (9th Cir. 2001) (defining the three elements of deception under the FTC Act as: 1) a representation, omission or practice that; 2) is likely to mislead consumers acting reasonably under the circumstances, and 3) the representation or omission is material). In evaluating the Commission's Section 5 claim, "the Court must consider the net impression that Defendants' representations had on consumers." FTC v. Atlantex Assocs., No. 87-0045-CIV, 1987 WL 20384 (S.D. Fla. Nov. 25, 1987), aff'd, 872 F.2d 966 (11th Cir. 1989).

The facts alleged in the Complaint, coupled with the sworn declarations of consumer victims submitted in support to the FTC's TRO Motion, demonstrate that in numerous instances, Corporate Defendants misrepresented that consumers were obligated to pay for unordered, unauthorized, or unwanted household products.[2] Corporate Defendants demanded payment for the unordered products through multiple dunning letters and repeated hostile collection calls threatening legal action. Corporate Defendants' also threatened damage to consumers' credit ratings. As a result of these aggressive tactics Corporate Defendants induced many consumers to pay for unordered or unwanted consumer products, See Complaint ¶¶ 12-27; 31-33.

### b. The Unordered Merchandise Statute

The Corporate Defendants' actions, as described in the Complaint at ¶¶ 21-22, also violated the Unordered Merchandise Statute, 39 U.S.C. § 3009. Subsection (a) of the Unordered Merchandise Statute provides that, "[e]xcept for (1) free samples . . . and (2) merchandise mailed by a charitable organization soliciting contributions, the mailing of unordered merchandise or of communications prohibited by subsection (c) of this section constitutes an unfair method of competition and an unfair trade practice in violation of

---

[2] Corporate Defendants' misrepresentations are material under Section 5, "as any representations involving the price of a product or service are presumptively material." FTC v. Winward Mktg. Ltd., No. 1:96-CV-615F, 1997 WL 33642380. At *10 (N.D. Ga. Sept. 30, 1997); See FTC v. Figge Int'l, 994 F.2d 595, 603-04 (9th Cir. 1993) (per curiam).

7

45(a)(1) of title 15." 39 U.S.C. § 3009(a).  Subsection (c) provides that, "[n]o mailer of any merchandise mailed in violation of subsection (a) of this section . . . shall mail to any recipient of such merchandise a bill for such merchandise or any dunning communications." 39 U.S.C. § 3009(c).  Corporate Defendants' acts of mailing unordered products to consumers and subsequently mailing bills and invoices to those consumers, violates subsections (a) and (c) of the Unordered Merchandise Statute, and therefore constitute unfair trade practices in violation of Section 5 of the FTC Act. See Complaint ¶¶ 21-22, 34-38.

### c. The Telemarketing Sales Rule

Corporate Defendants have also violated six separate provisions of the Telemarketing Sales Rule ("TSR")[3], including three violations related to the Do Not Call provisions of the TSR by: (1) failing to access, or pay to access the Do Not Call Registry before initiating outbound telemarketing calls to a telephone number within a given area code in violation of Section 310.8 of the TRS, 16 C.F.R. 310.8 (Complaint ¶¶ 56-57); (2) initiating outbound telemarketing calls to persons whose telephone numbers are registered on the Do Not Call Registry in violation of Section 310.4(b)(1)(iii)(B), 16 C.F.R. § 310.4(b)(1)(iii)(B) (Complaint ¶ 58); and (3) calling persons who had previously stated that they did not wish to receive calls from the Defendants, in violation of Section 310.4(b)(1)(iii)(A), 16 C.F.R. § 310.4(b)(1)(iii)(A) (Complaint ¶ 59).

Corporate Defendants also violated the TSR by (1) causing consumers' telephones to ring repeatedly, or engaging consumers repeatedly in telephone conversation with the intent to annoy, abuse, or harass consumers in violation of Section 310.3(b)(1) of the TSR, 16 C.F.R. § 310.4(b)(1)(i) (Complaint ¶ 51); and (2) causing billing information to be submitted for payment without the express informed consent and/or express verifiable consent of the consumer, thereby violating two separate provisions of the TSR, Sections

---

[3] Each separate violation of the TSR constitutes an unfair and deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act.  15 U.S.C. 6102(c); 15 U.S.C. § 57a(d)(3).

8

310.4(b)(1)(i) and 310.3(a)(3), 16 C.F.R. §§ 310.4(b)(1)(i) and 310.3(a)(3). (Complaint ¶¶ 52-55).

### 3.    Eitel Factors Four Through Seven Also Weigh in The FTC's Favor

The fourth Eitel factor, the sum of money at stake, favors entry of judgment because the monetary judgment sought is warranted in relation to the seriousness of Corporate Defendants' conduct. See Best W. Int'l, 2008 U.S. Dist. LEXIS 40348 at *5. HDW has been operating since 1998, and as described in Section III.D.2., infra, the FTC has established that in the past three years alone Corporate Defendants have extracted more than $13.4 million from consumers through their unlawful activities. Through the factual allegations of the Complaint and well as other evidence submitted in support of the TRO Motion, the FTC has established that all of the revenues realized by the Defendants resulted from deceptive and other unlawful practices.[4]

The fifth Eitel factor, the possibility of dispute concerning material facts, favors entry of judgment because there is no possibility of dispute – the entry of default establishes the truth of the factual allegations of the complaint. See Geddes at 560; Fed. R. Civ. P. Rule 8(d). The sixth Eitel factor, whether the default was due to excusable neglect, favors entry of judgment. The Corporate Defendants have been duly served with the complaint and the request for entry of default, but have made no effort to make an appearance in this action, nor have they retained counsel. Benway Decl. ¶¶ 5-8 . Thus, Corporate Defendants' default is the result of an intentional decision not to defend. When a corporation fails to retain counsel for litigation and "the district court enters a default

---

[4]Indeed since the Complaint was filed, defendant Peeples has admitted in sworn testimony that Corporate Defendants' telemarketing representatives falsely represented to consumers that they were blind, handicapped, or disabled to induce consumers to purchase Corporate Defendants' products. See Section II, supra.

1  judgment against it, it is perfectly appropriate." High Country Broad. Co, Inc., 3 F.3d at
2  1245.
3     Although the final Eitel factor favors deciding cases on the merits whenever
4  possible, in this case this factor nonetheless weighs in favor of entry of default judgment.
5  Corporate Defendants' failure to answer or otherwise respond to the complaint, "make a
6  decision on the merits impractical, if not impossible." See Best W. Int'l, 2008 U.S. Dist.
7  LEXIS 40348 at *34.
8     Considering the Eitel factors in toto, default judgment is plainly warranted.  Each of
9  the six factors weighs in favor of granting the FTC's motion.  By virtue of their failure to
10 answer or otherwise respond to the Commission's Complaint, Corporate Defendants have
11 admitted, as a matter of law, to violating Section 5(a) of the FTC Act, the Telemarketing
12 Sales Rule, and the Unordered Merchandise Statute.  Accordingly, this Court should grant
13 the FTC's Motion for Default Judgment and issue an order that requires Corporate
14 Defendants to pay restitution in the amount of consumer loss.  The Court should further
15 order that the Permanent Receiver in this case wind down the Corporate Defendants and
16 liquidate their assets in partial satisfaction of the monetary judgment awarded.

17  **C.  The Court Should Enter a Default Judgment for the Requested Injunctive and Equitable Relief against Corporate Defendants Because**
18  **it is Authorized and Appropriate**

19     **1.  The Requested Relief is Authorized**

20    The Commission brought this action under the second proviso of Section 13(b) of
21 the FTC Act, which provides that "in proper cases the Commission may seek, and, after
22 proper proof, the court may issue, a permanent injunction," against violations of any
23 provision of law enforced by the FTC.  15 U.S.C. § 53(b).  In fashioning injunctive relief
24 under Section 13(b), the Court may bring to bear the full range of its inherent equitable
25 powers, including the power to grant equitable monetary relief in the form of consumer
26 redress, restitution and disgorgement, and any other ancillary relief necessary to
27 accomplish justice.  See  FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982);
28 FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984); FTC v. Gem

10

Merch. Corp., 87 F.3d 466, 468-69 (11th Cir. 1996). Indeed, once the equitable power of a district court has been invoked, the full breadth of the court's authority is available. See U.S. Oil & Gas Corp., 748 F.2d at 1434 ("We hold that Congress, when it gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission, also gave the district court authority to grant *any* ancillary relief necessary to accomplish complete justice.") (emphasis added).

The provisions of the proposed Default Judgment fall well within the equitable power of this Court. See id. In the main, the proposed Default Judgment awards a monetary judgment in the amount of consumer injury, provides for consumer redress, and requires the Receiver to wind down the Corporate Defendants. Upon the abatement of the Receivership, the Receiver will transfer any remaining Receivership assets to the FTC in partial satisfaction of the monetary judgment described below.

**2.  The Court Should Enter a Default Judgment Against the Corporate Defendants for Equitable Monetary Relief in the Amount of $ 13,421,918**

As discussed above, included in the Court's power to grant equitable relief is the authority to order payment of consumer redress, restitution, and disgorgement. Figge Int'l 994 F.2d at 605; FTC v. Febre, 128 F.3d 530, 534 (7th Cir. 1997); FTC v. Sec. Rare Coin, 931 F.2d 1312, 1314-15 (8th Cir. 1991). The proper amount of redress and restitution relief is the full amount lost by consumers as a result of defendants' unlawful conduct. Figge Int'l 994 F.2d at 606-07; Febre, 128 F.3d at 535-36; Gem Merch. Corp., 87 F.3d at 468; Atlantex, 1987-2 Trade Cas. (CCH) ¶67,788 at 59,256 (redress is measured by amounts previously paid less any amount returned to consumers), aff'd, 872 F.2d 966 (11th Cir. 1989). As set forth below, the detailed declarations submitted by the FTC in support of this Motion establish that consumer injury caused by Corporate Defendants, totals $ 13,421,918.04[5]. The FTC has properly alleged that the Corporate Defendants have

---

[5] The FTC is seeking redress and restitution based on Corporate Defendants' net profits since 2005, the period for which it has obtained financial statements and tax returns for the Corporate Defendants. Although HDW has been in operation since 1998,

11

operated together as a common enterprise (Complaint ¶ 11), and are therefore liable for each other's violations of the FTC Act, the Unordered Merchandise Statute, and the TSR. "Where one or more corporate entities operate in a common enterprise, each may be held liable for the deceptive acts and practices of the others." FTC v. Bay Area Bus. Council, Inc., 2004 WL 769388, at *12 (N.D. Ill. 2004) (citing FTC v. Think Achievement Corp., 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), rev'd in part on other grounds, 312 F.3d 259 (7th Cir. 2002)); see also CFTC v. Emerald Worldwide Holdings, Inc., No. CV03-8339 AHM, 2005 U.S. Dist. LEXIS 42893, at *28 (C.D. Cal. April 19, 2005).

When calculating monetary relief when entering a default judgment, the Court has considerable latitude to determine the amount of damages, and may do so with or without a hearing. Fed. R. Civ. P. Rule 55(b)(2). The Court may dispense with a hearing when the amount claimed is capable of ascertainment from definite figures contained in documentary evidence or in detailed declarations or affidavits. See Florida Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (once default judgment established liability, court awarded damages based upon affidavit of "proof of damages" submitted by plaintiff); Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (A judgment by default awarding damages may be entered without a hearing where "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."); Leedo Cabinetry v. James Sales & Distrib., Inc., 157 F.3d 410 (5th Cir. 1998) (affirming default judgment without hearing where damages capable of mathematical calculation). Indeed, for purposes of entering a default judgment, both liquidated and unliquidated monetary

---

financial information for the Corporate Defendants is not available prior to 2005. Moreover, based on the financial statements provided by Corporate Defendants, as well as information contained in Receiver's First Report at 5-7 [Docket Entry 37], the judgment the FTC seeks far exceeds Corporate Defendants' assets. As the FTC is seeking to have the Corporate Defendants wound down, it is a virtual certainty that the FTC will be unable to collect the vast majority of the judgment.

12

relief may be proven by affidavit.  See, e.g., Florida Physician's Ins. Co., 8 F.3d at 783; Dundee Cement Co., 722 F.2d at 1323.

The FTC reviewed the Corporate Defendants' financial statements, federal tax returns, and bank records.  The detailed declarations of FTC accountant John A. Crowley, and FTC Investigator Carol L. Jones submitted herewith as Exhibits 3 and 4, respectively, establish that defendants are responsible for $13,421,918.04 in consumer injury since 2005.[6]  See Crowley Declaration ¶¶ 3-5, Jones Declaration ¶¶ 7-8.

The facts of the Commission's Complaint having been taken as true, and the amount of equitable monetary relief having been established by Declaration and documentary evidence, the Court should enter default judgment jointly and severally against the Corporate Defendants for equitable monetary relief in the amount of $13,421,918 (Section III of the Proposed Order).  Consumers are entitled to full refunds of the money they paid because their losses resulted from Corporate Defendants' unlawful practices under the FTC Act, the Unordered Merchandise Statute, and the Telemarketing Sales Rule.

### 3. The Court Should Order the Permanent Receiver to Wind Down the Corporate Defendants

The proposed Permanent Injunction continues the receivership over the Corporate Defendants, and orders the Receiver appointed by the Court's Preliminary Injunction to take all necessary steps to wind down the businesses of the Corporate Defendants.  It is within the Court's power, and indeed it is necessary and appropriate, to order that the Corporate Defendants be wound down.  See H.N. Singer, Inc, 668 F.2d at 1113 (concluding that when Congress gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission, it also

---

[6] The FTC need only show that its calculations reasonably approximate the amount of consumers' harm.  See Febre, 128 F.2d at 535.  To the extent that the corporate records or their lack of availability make it impossible to determine with certainty the exact amount of injury suffered by consumers, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty."  Id.

13

1 gave the district court authority to grant any ancillary relief necessary to accomplish
2 complete justice); U.S. Oil & Gas Corp., 748 F.2d at 1433-34 (noting that district courts
3 have power "to do equity and to mould each decree to the necessities of the particular
4 case") (citations omitted).

5     The Corporate Defendants have not operated since the TRO was implemented. The
6 Permanent Receiver has determined that defendants HDW and HHI cannot be operated
7 lawfully and profitably. Receiver's Report at 13. Within the common enterprise,
8 Defendant HS's sole purpose was to fulfill HDW's and HHI's orders. HDW Deposition
9 excerpt, Exhibit 2 at 170-171. The Receiver has already liquidated the assets of
10 defendants HDW and HHI. Receiver's Report at 5. There being no justification for
11 continuing to maintain the Corporate Defendants, the Court should order that the Receiver
12 continue the process of winding them down. Pursuant to Section VI of the Proposed
13 Order, upon the abatement of the Receivership, the Receiver will transfer any remaining
14 Receivership assets to the FTC in partial satisfaction of the monetary judgment described
15 above, and make a final report to this Court.

## IV. CONCLUSION

17     For the foregoing reasons, the Commission requests that the Court grant its motion
18 and enter default judgment against the Corporate Defendants. A proposed order is
19 attached hereto.

Dated: September 11, 2008                    Respectfully submitted,

          /s/ Kathleen Benway
KATHLEEN BENWAY
GARY L. IVENS
Federal Trade Commission
600 Pennsylvania Ave, NW, H-286
Washington, DC  20580
Phone:  (202) 326-2024 / (202) 326-2330
Fax:  (202) 326-3395
Email:  kbenway@ftc.gov / givens@ftc.gov

*Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties in the manner specified:

**Via transmission of Notices of Electronic Filing generated by CM/ECF:**

Matthew Q. Callister, Esq.
Callister & Reynolds
823 Las Vegas Blvd. South
Las Vegas, Nevada 89101
*Court Appointed Receiver for*
*Handicapped & Disabled Workshops, Inc.*
*Handi-Hope Industries, Inc.*
*HandiShip, LLC*

**Via United States Postal Service First Class Mail**

David B. Cassidy, Esq.
4356 North Civic Center Plaza Drive
Scottsdale, AZ 85251
*Attorney for Joshua Abramson*

Bruce D. Peeples
29264 North 48th Way
Cave Creek, Arizona 85331

George Thomas
6935 West Carson Rd.
Laveen, Arizona 85339

/s/ Kathleen Benway

15